(Slip Opinion) OCTOBER TERM, 2010 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FREEMAN *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 09–10245. Argued February 23, 2011—Decided June 23, 2011

In order to reduce unwarranted federal sentencing disparities, the Sentencing Reform Act of 1984 authorizes the United States Sentencing Commission to create, and to retroactively amend, Sentencing Guidelines to inform judicial discretion. Title 18 U. S. C. §3582(c)(2) permits a defendant who was sentenced to a term of imprisonment "based on" a Guidelines sentencing range that has subsequently been lowered by retroactive amendment to move for a sentence reduction. This case concerns §3582(c)(2)'s application to cases in which the defendant and the Government have entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), which permits the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case," and "binds the court [to the agreed-upon sentence] once [it] accepts the plea agreement."

Petitioner Freeman was indicted for various crimes, including possessing with intent to distribute cocaine base. 21 U. S. C. §841(a)(1). He entered into an 11(c)(1)(C) agreement to plead guilty to all charges; in return the Government agreed to a 106-month sentence. The agreement states that the parties independently reviewed the applicable Guidelines, noted that Freeman agreed to have his sentence determined under the Guidelines, and reflected the parties' understanding that the agreed-to sentence corresponded with the minimum sentence suggested by the applicable Guidelines range of 46 to 57 months, along with a consecutive mandatory minimum of 60 months for possessing a firearm in furtherance of a drug-trafficking crime under 18 U. S. C. §924(c)(1)(A). Three years after the District Court accepted the plea agreement, the Commission issued a retroactive Guidelines amendment to remedy the significant disparity between the penalties for cocaine base and powder cocaine offenses.

Because the amendment's effect was to reduce Freeman's applicable sentencing range to 37 to 46 months plus the consecutive 60-month mandatory minimum, he moved for a sentence reduction under §3582(c)(2). However, the District Court denied the motion, and the Sixth Circuit affirmed because its precedent rendered defendants sentenced pursuant to 11(c)(1)(C) agreements ineligible for §3582(c)(2) relief, barring a miscarriage of justice or mutual mistake.

*Held:* The judgment is reversed, and the case is remanded.

355 Fed. Appx. 1, reversed and remanded.

    JUSTICE KENNEDY, joined by JUSTICE GINSBURG, JUSTICE BREYER, and JUSTICE KAGAN, concluded that defendants who enter into 11(c)(1)(C) agreements that specify a particular sentence as a condition of the guilty plea may be eligible for relief under §3582(c)(2). Pp. 5–10.

    (a) The text and purpose of the statute, Rule 11(c)(1)(C), and the governing Guidelines policy statements compel the conclusion that the district court has authority to entertain §3582(c)(2) motions when sentences are imposed in light of the Guidelines, even if the defendant enters into an 11(c)(1)(C) agreement. The district judge must, in every case, impose "a sentence sufficient, but not greater than necessary, to comply with" the purposes of federal sentencing, in light of the Guidelines and other relevant factors. §3553(a). The Guidelines provide a framework or starting point—a basis, in the term's commonsense meaning—for the judge's exercise of discretion. Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree on a specific sentence, but that agreement does not discharge the district court's independent obligation to exercise its discretion. In the usual sentencing, whether following trial or plea, the judge's reliance on the Guidelines will be apparent when the judge uses the Guidelines range as the starting point in the analysis and imposes a sentence within the range. *Gall* v. *United States*, 552 U. S. 38, 49. Even where the judge varies from the recommended range, *id.*, at 50, if the judge uses the sentencing range as the beginning point to explain the deviation, then the Guidelines are in a real sense a basis for the sentence. The parties' recommended sentence binds the court "once the court accepts the plea agreement," Rule 11(c)(1)(C), but the relevant policy statement forbids the judge to accept an agreement without first giving due consideration to the applicable Guidelines sentencing range, even if the parties recommend a specific sentence as a condition of the guilty plea, see U. S. Sentencing Commission, Guidelines Manual §6B1.2. This approach finds further support in the policy statement applicable to §3582(c)(2) motions, which instructs the district court in modifying a sentence to substitute the retroactive amendment, but to leave all original Guidelines determinations in

place, §1B1.10(b)(1).  Pp. 5–7.

 (b) Petitioner's sentencing hearing transcript reveals that the District Court expressed its independent judgment that the sentence was appropriate in light of the applicable Guidelines range.  Its decision was therefore "based on" that range within §3582(c)(2)'s meaning.  P. 7.

 (c) The Government's argument that sentences that follow an 11(c)(1)(C) agreement are based only on the agreement itself and not the Guidelines, and are therefore ineligible for §3582(c)(2) reduction, must be rejected.  Even when a defendant enters into an 11(c)(1)(C) agreement, the judge's decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and when it is, the defendant should be eligible to seek §3582(c)(2) relief.  Pp. 7–10.

 JUSTICE SOTOMAYOR concluded that if an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) ((C) agreement) expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, and that range is subsequently lowered by the Sentencing Commission, the prison term is "based on" the range employed and the defendant is eligible for sentence reduction under 18 U. S. C. §3582(c)(2).  Pp. 1–11.

 (a) The term of imprisonment imposed by a district court pursuant to a (C) agreement is "based on" the agreement itself, not on the judge's calculation of the Guidelines sentencing range.  To hold otherwise would be to contravene the very purpose of (C) agreements—to bind the district court and allow the Government and the defendant to determine what sentence he will receive.  Pp. 1–5.

 (b) This does not mean, however, that a term of imprisonment imposed under a (C) agreement can *never* be reduced under §3582(c)(2).  Because the very purpose of a (C) agreement is to allow the parties to determine the defendant's sentence, when the agreement itself employs a particular Guidelines sentencing range applicable to the charged offenses in establishing the term of imprisonment imposed by the district court, the defendant is eligible to have his sentence reduced under §3582(c)(2).  Pp. 5–9.

 (c) Freeman is eligible.  The offense level and criminal history category set forth in his (C) agreement produce a sentencing range of 46 to 57 months; it is evident that the parties combined the 46-month figure at the low end of the range with the 60-month mandatory minimum sentence under §924(c)(1)(A) to establish the 106-month sentence called for in the agreement.  Under the amended Guidelines, however, the applicable sentencing range is now 37 to 46 months.  Therefore, Freeman's prison term is "based on" a sentencing range that "has subsequently been lowered by the Sentencing Com-

Syllabus

mission," rendering him eligible for sentence reduction. Pp. 9–11.

KENNEDY, J., announced the judgment of the Court and delivered an opinion, in which GINSBURG, BREYER, and KAGAN, JJ., joined. SO-TOMAYOR, J., filed an opinion concurring in the judgment. ROBERTS, C. J., filed a dissenting opinion, in which SCALIA, THOMAS, and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————

No. 09–10245

————

WILLIAM FREEMAN, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 23, 2011]

JUSTICE KENNEDY announced the judgment of the Court and delivered an opinion, in which JUSTICE GINSBURG, JUSTICE BREYER, and JUSTICE KAGAN join.

The Sentencing Reform Act of 1984, 18 U. S. C. §3551 *et seq.*, calls for the creation of Sentencing Guidelines to inform judicial discretion in order to reduce unwarranted disparities in federal sentencing. The Act allows retroactive amendments to the Guidelines for cases where the Guidelines become a cause of inequality, not a bulwark against it. When a retroactive Guideline amendment is adopted, §3582(c)(2) permits defendants sentenced based on a sentencing range that has been modified to move for a reduced sentence.

The question here is whether defendants who enter into plea agreements that recommend a particular sentence as a condition of the guilty plea may be eligible for relief under §3582(c)(2). See Fed. R. Crim. Proc. 11(c)(1)(C) (authorizing such plea agreements). The Court of Appeals for the Sixth Circuit held that, barring a miscarriage of justice or mutual mistake, defendants who enter into 11(c)(1)(C) agreements cannot benefit from retroactive Guideline amendments.

Five Members of the Court agree that this judgment must be reversed. The Justices who join this plurality opinion conclude that the categorical bar enacted by the

Court of Appeals finds no support in §3582(c)(2), Rule
11(c)(1)(C), or the relevant Guidelines policy statements.
In every case the judge must exercise discretion to im-
pose an appropriate sentence. This discretion, in turn, is
framed by the Guidelines. And the Guidelines must be
consulted, in the regular course, whether the case is one in
which the conviction was after a trial or after a plea,
including a plea pursuant to an agreement that recom-
mends a particular sentence. The district judge's decision
to impose a sentence may therefore be based on the Guide-
lines even if the defendant agrees to plead guilty under
Rule 11(c)(1)(C). Where the decision to impose a sentence
is based on a range later subject to retroactive amend-
ment, §3582(c)(2) permits a sentence reduction.

Section 3582(c)(2) empowers district judges to correct sen-
tences that depend on frameworks that later prove un-
justified. There is no reason to deny §3582(c)(2) relief to
defendants who linger in prison pursuant to sentences
that would not have been imposed but for a since-rejected,
excessive range.

JUSTICE SOTOMAYOR would reverse the judgment on a
different ground set out in the opinion concurring in the
judgment. That opinion, like the dissent, would hold that
sentences following 11(c)(1)(C) agreement are based on the
agreement rather than the Guidelines, and therefore that
§3582(c)(2) relief is not available in the typical case. But
unlike the dissent she would permit the petitioner here to
seek a sentence reduction because his plea agreement in
express terms ties the recommended sentence to the
Guidelines sentencing range.

The reasons that lead those Members of the Court who
join this plurality opinion may be set forth as follows.

## I

### A

Federal courts are forbidden, as a general matter, to

"modify a term of imprisonment once it has been imposed," 18 U. S. C. §3582(c); but the rule of finality is subject to a few narrow exceptions. Here, the exception is contained in a statutory provision enacted to permit defendants whose Guidelines sentencing range has been lowered by retroactive amendment to move for a sentence reduction if the terms of the statute are met. The statute provides:

> "In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U. S. C. 994(*o*) . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." §3582(c)(2).

This case concerns the application of the statute to cases in which defendants enter into plea agreements under Rule 11(c)(1)(C). That Rule permits the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, . . . [a request which] binds the court once the court accepts the plea agreement." The question is whether defendants who enter into 11(c)(1)(C) agreements that specify a particular sentence may be said to have been sentenced "based on" a Guidelines sentencing range, making them eligible for relief under §3582(c)(2).

## B

Petitioner William Freeman was indicted in 2005 for various crimes, including possessing with intent to distribute cocaine base. 21 U. S. C. §§841(a)(1); (b)(1)(C). He entered into an agreement under Rule 11(c)(1)(C) in which he agreed to plead guilty to all charges. In return the Government "agree[d] that a sentence of 106 months' incarceration is the appropriate disposition of this case."

App. 26a.  The agreement states that "[b]oth parties have independently reviewed the Sentencing Guidelines applicable in this case," and that "[Freeman] agrees to have his sentence determined pursuant to the Sentencing Guidelines."  The agreement reflects the parties' expectation that Freeman would face a Guidelines range of 46 to 57 months, *id.*, at 27a–28a (Offense Level 19, Criminal History Category IV), along with a consecutive mandatory minimum of 60 months for possessing a firearm in furtherance of a drug-trafficking crime under 18 U. S. C. §924(c)(1)(A).  The recommended sentence of 106 months thus corresponded with the minimum sentence suggested by the Guidelines, in addition to the 60-month §924(c)(1)(A) sentence.

The District Court accepted the plea agreement.  At the sentencing hearing, the court "adopt[ed] the findings of the probation officer disclosed in the probation report and application of the guidelines as set out therein."  App. 47a.  "[H]aving considered the advisory guidelines and 18 USC 3553(a)," the court imposed the recommended 106-month sentence, which was "within the guideline ranges"—the 46- to 57-month range the parties had anticipated plus the mandatory 60 months under §924(c)(1)(A)—and "sufficient to meet the objectives of the law."  *Id.* at 48a–49a.

Three years later, the Commission issued a retroactive amendment to the Guidelines to remedy the significant disparity between the penalties for cocaine base and powder cocaine offenses.  See United States Sentencing Commission, Guidelines Manual Supp. App. C, Amdt. 706 (Nov. 2010) (USSG) (effective Nov. 1, 2007) (adjusting Guidelines); *id.*, Amdt. 713 (effective Mar. 3, 2008) (making Amendment 706 retroactive).  Its effect was to reduce Freeman's applicable sentencing range to 37 to 46 months, again with the consecutive 60-month mandatory minimum.  App. 142a–144a (Sealed).

Freeman   moved   for   a   sentence   reduction   under

§3582(c)(2). The District Court, however, denied the motion, and the Court of Appeals for the Sixth Circuit affirmed. *United States* v. *Goins*, 355 Fed. Appx. 1 (2009). Adhering to its decision in *United States* v. *Peveler*, 359 F. 3d 369 (2004), the Court of Appeals held that defendants sentenced following 11(c)(1)(C) agreements that specify a particular sentence are ineligible for §3582(c)(2) relief, barring a miscarriage of justice or mutual mistake.

This Court granted certiorari. 561 U. S. \_\_ (2010).

II

Federal sentencing law requires the district judge in every case to impose "a sentence sufficient, but not greater than necessary, to comply with" the purposes of federal sentencing, in light of the Guidelines and other §3553(a) factors. 18 U. S. C. §3553(a). The Guidelines provide a framework or starting point—a basis, in the commonsense meaning of the term—for the judge's exercise of discretion. *E.g.*, 1 Oxford English Dictionary 977 (2d ed. 1989). Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion. In the usual sentencing, whether following trial or plea, the judge's reliance on the Guidelines will be apparent, for the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range. *Gall* v. *United States*, 552 U. S. 38, 49 (2007). Even where the judge varies from the recommended range, *id.*, at 50, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense a basis for the sentence.

Rule 11(c)(1)(C) makes the parties' recommended sentence binding on the court "once the court accepts the plea agreement," but the governing policy statement confirms that the court's acceptance is itself based on the Guide-

lines.  See USSG §6B1.2.  That policy statement forbids the district judge to accept an 11(c)(1)(C) agreement without first evaluating the recommended sentence in light of the defendant's applicable sentencing range.  The commentary to §6B1.2 advises that a court may accept an 11(c)(1)(C) agreement "only if the court is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence departs from the applicable guideline range for justifiable reasons."  Cf. *Stinson* v. *United States*, 508 U. S. 36 (1993) (Guidelines commentary is authoritative).  Any bargain between the parties is contingent until the court accepts the agreement.  The Guidelines require the district judge to give due consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea.

This approach finds further support in the policy statement that applies to §3582(c)(2) motions.  See USSG §1B1.10.  It instructs the district court in modifying a sentence to substitute only the retroactive amendment and then leave all original Guidelines determinations in place.  §1B1.10(b)(1).  In other words, the policy statement seeks to isolate whatever marginal effect the since-rejected Guideline had on the defendant's sentence.  Working backwards from this purpose, §3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement.  This is the only rule consistent with the governing policy statement, a statement that rests on the premise that a Guideline range may be one of many factors that determine the sentence imposed.

Thus, the text and purpose of the three relevant sources—the statute, the Rule, and the governing policy

statements—require the conclusion that the district court has authority to entertain §3582(c)(2) motions when sentences are imposed in light of the Guidelines, even if the defendant enters into an 11(c)(1)(C) agreement.

## III

The transcript of petitioner's sentencing hearing reveals that his original sentence was based on the Guidelines. The District Court first calculated the sentencing range, as both §3553(a)(4) and §6B1.2(c) require. App. 47a, 49a. It explained that it "considered the advisory guidelines and 18 USC 3553(a)," and that "the sentence imposed . . . fall[s] within the guideline rang[e] and [is] sufficient to meet the objectives of the law." *Id.*, at 48a–49a. Apart from the defense attorney's initial statement that the case involved a "(C) plea," *id.*, at 47a, the hearing proceeded as if the agreement did not exist. The court expressed its independent judgment that the sentence was appropriate in light of the applicable Guidelines range, and its decision was therefore "based on" that range.

## IV

The Government asks this Court to hold that sentences like petitioner's, which follow an 11(c)(1)(C) agreement, are based only on the agreement and not the Guidelines, and therefore that defendants so sentenced are ineligible for §3582(c)(2) relief. The Government's position rests in part on the concern that the conclusion reached here will upset the bargain struck between prosecutor and defendant. See Brief for United States 42–43. That, however, has nothing to do with whether a sentence is "based on" the Guidelines under §3582(c)(2). And in any event, the concern is overstated. Retroactive reductions to sentencing ranges are infrequent, so the problem will not arise often. Thompson, DOJ's Attack on Federal Judicial "Leniency," the Supreme Court's Response, and the Future of

Criminal Sentencing, 44 Tulsa L. Rev. 519, 535 (2009). More important, the district court's authority under §3582(c)(2) is subject to significant constraints, constraints that can be enforced by appellate review.

The binding policy statement governing §3582(c)(2) motions places considerable limits on district court discretion. All Guidelines decisions from the original sentencing remain in place, save the sentencing range that was altered by retroactive amendment. USSG §1B1.10(b)(1). In an initial sentencing hearing, a district court can vary below the Guidelines; but, by contrast, below-Guidelines modifications in §3582(c)(2) proceedings are forbidden, USSG §1B1.10(b)(2)(A), except where the original sentence was itself a downward departure. §1B1.10(b)(2)(B). And the court must always "consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." §1B1.10, comment., n. 1(B)(ii). The district court's authority is limited; and the Courts of Appeals, and ultimately this Court, can ensure that district courts do not overhaul plea agreements, thereby abusing their authority under §3582(c)(2). See *Dillon* v. *United States*, 560 U. S. ___ (2010) (reviewing and affirming a §3582(c)(2) sentence reduction); *Gall*, 552 U. S., at 49 (all sentences are reviewable for abuse of discretion).

The Government would enact a categorical bar on §3582(c)(2) relief. But such a bar would prevent district courts from making an inquiry that is within their own special knowledge and expertise. What is at stake in this case is a defendant's eligibility for relief, not the extent of that relief. Indeed, even where a defendant is permitted to seek a reduction, the district judge may conclude that a reduction would be inappropriate. District judges have a continuing professional commitment, based on scholarship and accumulated experience, to a consistent sentencing policy. They can rely on the frameworks they have de-

vised to determine whether and to what extent a sentence reduction is warranted in any particular case. They may, when considering a §3582(c)(2) motion, take into account a defendant's decision to enter into an 11(c)(1)(C) agreement. If the district court, based on its experience and informed judgment, concludes the agreement led to a more lenient sentence than would otherwise have been imposed, it can deny the motion, for the statute permits but does not require the court to reduce a sentence. This discretion ensures that §3582(c)(2) does not produce a windfall.

As noted, the opinion concurring in the judgment suggests an intermediate position. That opinion argues that in general defendants sentenced following 11(c)(1)(C) agreements are ineligible for §3582(c)(2) relief, but relief may be sought where the plea agreement itself contemplates sentence reduction. The statute, however, calls for an inquiry into the reasons for a judge's sentence, not the reasons that motivated or informed the parties. If, as the Government suggests, the judge's decision to impose a sentence is based on the agreement, then §3582(c)(2) does not apply. The parties cannot by contract upset an otherwise-final sentence. And the consequences of this erroneous rule would be significant. By allowing modification only when the terms of the agreement contemplate it, the proposed rule would permit the very disparities the Sentencing Reform Act seeks to eliminate.

The Act aims to create a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences. See 18 U. S. C. §3553(a)(6); K. Stith & J. Cabranes, Fear of Judging 104–105 (1998). Section 3582(c)(2) contributes to that goal by ensuring that district courts may adjust sentences imposed pursuant to a range that the Commission concludes are too severe, out of step with the seriousness of the crime and the sentencing ranges of analogous offenses, and inconsistent with the

Act's purposes.

The crack-cocaine range here is a prime example of an unwarranted disparity that §3582(c)(2) is designed to cure. The Commission amended the crack-cocaine Guidelines to effect a "partial remedy" for the "urgent and compelling" problem of crack-cocaine sentences, which, the Commission concluded, "significantly undermines the various congressional objectives set forth in the Sentencing Reform Act." United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy, pp. 8–10 (May 2007); see also USSG Supp. App. C, Amdt. 706; *Kimbrough* v. *United States*, 552 U. S. 85, 99–100 (2007). The Commission determined that those Guidelines were flawed, and therefore that sentences that relied on them ought to be reexamined. There is no good reason to extend the benefit of the Commission's judgment only to an arbitrary subset of defendants whose agreed sentences were accepted in light of a since-rejected Guidelines range based on whether their plea agreements refer to the Guidelines. Congress enacted §3582(c)(2) to remedy systemic injustice, and the approach outlined in the opinion concurring in the judgment would undercut a systemic solution.

Even when a defendant enters into an 11(c)(1)(C) agreement, the judge's decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and when it is, the defendant should be eligible to seek §3582(c)(2) relief. This straightforward analysis would avoid making arbitrary distinctions between similar defendants based on the terms of their plea agreements. And it would also reduce unwarranted disparities in federal sentencing, consistent with the purposes of the Sentencing Reform Act.

\*    \*    \*

The judgment of the Court of Appeals is reversed and

this case is remanded for further proceedings.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 09–10245

———————

## WILLIAM FREEMAN, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 23, 2011]

JUSTICE SOTOMAYOR, concurring in the judgment.

I agree with the plurality that petitioner William Freeman is eligible for sentence reduction under 18 U. S. C. §3582(c)(2), but I differ as to the reason why. In my view, the term of imprisonment imposed by a district court pursuant to an agreement authorized by Federal Rule of Criminal Procedure 11(c)(1)(C) ((C) agreement) is "based on" the agreement itself, not on the judge's calculation of the Sentencing Guidelines. However, I believe that if a (C) agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, and that range is subsequently lowered by the United States Sentencing Commission, the term of imprisonment is "based on" the range employed and the defendant is eligible for sentence reduction under §3582(c)(2).

I

To ask whether a particular term of imprisonment is "based on" a Guidelines sentencing range is to ask whether that range serves as the basis or foundation for the term of imprisonment. No term of imprisonment—

whether derived from a (C) agreement or otherwise—has legal effect until the court enters judgment imposing it. As a result, in applying §3582(c)(2) a court must discern the foundation for the term of imprisonment imposed by the sentencing judge. As the plurality explains, in the normal course the district judge's calculation of the Guidelines range applicable to the charged offenses will serve as the basis for the term of imprisonment imposed. See *ante*, at 5; see also *Gall* v. *United States*, 552 U. S. 38, 49 (2007).

Sentencing under (C) agreements, however, is different. At the time of sentencing, the term of imprisonment imposed pursuant to a (C) agreement does not involve the court's independent calculation of the Guidelines or consideration of the other 18 U. S. C. §3553(a) factors. The court may only accept or reject the agreement, and if it chooses to accept it, at sentencing the court may only impose the term of imprisonment the agreement calls for; the court may not change its terms. See Fed. Rule Crim. Proc. 11(c)(3)(A) ("To the extent the plea agreement is of the type specified in [Rule 11(c)(1)(C)], the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report"); Advisory Committee's Notes on 1979 Amendments to Fed. Rule Crim. Proc. 11, 18 U. S. C. App., pp. 583–584 (1982 ed.) ("[C]ritical to a . . . (C) agreement is that the defendant receive the . . . agreed-to sentence"); accord, *United States* v. *Rivera-Martínez*, 607 F. 3d 283, 286 (CA1 2010); *United States* v. *Green*, 595 F. 3d 432, 438 (CA2 2010).

In the (C) agreement context, therefore, it is the binding plea agreement that is the foundation for the term of imprisonment to which the defendant is sentenced. At the moment of sentencing, the court simply implements the terms of the agreement it has already accepted. Contrary to the plurality's view, see *ante*, at 5–6, the fact that USSG §6B1.2(c) (Nov. 2010) instructs a district court to use the Guidelines as a yardstick in deciding whether to accept a

(C) agreement does not mean that the term of imprison-
ment imposed by the court is "based on" a particular
Guidelines sentencing range. The term of imprisonment
imposed by the sentencing judge is dictated by the terms
of the agreement entered into by the parties, not the
judge's Guidelines calculation. In short, the term of im-
prisonment imposed pursuant to a (C) agreement is, for
purposes of §3582(c)(2), "based on" the agreement itself.

To hold otherwise would be to contravene the very pur-
pose of (C) agreements—to bind the district court and
allow the Government and the defendant to determine
what sentence he will receive. Although district courts
ordinarily have significant discretion in determining the
appropriate sentence to be imposed on a particular defen-
dant, see *Gall*, 552 U. S., at 46, under Rule 11(c)(1)(C) it
is the parties' agreement that determines the sentence to
be imposed, see Advisory Committee's Notes on 1999
Amendments to Fed. Rule Crim. Proc. 11, 18 U. S. C. App.,
p. 1570 (2000 ed.) (noting that, under a (C) agreement,
"the government and defense have actually agreed on
what amounts to an appropriate sentence . . . . [T]his
agreement is binding on the court once the court accepts
it"). To be sure, the court "retains absolute discretion
whether to accept a plea agreement," *ibid.*, but once it
does it is bound at sentencing to give effect to the parties'
agreement as to the appropriate term of imprisonment.

Allowing district courts later to reduce a term of im-
prisonment simply because the court itself considered
the Guidelines in deciding whether to accept the agree-
ment would transform §3582(c)(2) into a mechanism by
which courts could rewrite the terms of (C) agreements in
ways not contemplated by the parties. At the time that
§3582(c)(2) was enacted in 1984, it was already well un-
derstood that, under Rule 11, the term of imprisonment
stipulated in a (C) agreement bound the district court once
it accepted the agreement. See Fed. Rule Crim. Proc.

11(e)(1) (1982) (specifying that the parties to a (C) agree-
ment may "agree that a specific sentence is the appropri-
ate disposition of the case"); *United States* v. *French*, 719
F. 2d 387, 389, n. 2 (CA11 1983) *(per curiam)* (noting that
a Rule 11(e)(1)(C) plea agreement was a "'binding' plea
bargain").[1]

In the absence of any indication from the statutory text
or legislative history that §3582(c)(2) was meant to fun-
damentally alter the way in which Rule 11(c)(1)(C) oper-
ates, I cannot endorse the plurality's suggestion that
§3582(c)(2) should be understood "to permit the district
court to revisit a prior sentence to whatever extent the
sentencing range in question was a relevant part of the
analytic framework the judge used to determine the sen-
tence or to approve the agreement." *Ante*, at 6; cf. *Dillon*
v. *United States*, 560 U. S. ___, ___ (2010) (slip op., at 8)
("Congress intended [§3582(c)(2)] to authorize only a
limited adjustment to an otherwise final sentence").

By the same token, the mere fact that the parties to a
(C) agreement may have considered the Guidelines in the
course of their negotiations does not empower the court
under §3582(c)(2) to reduce the term of imprisonment they
ultimately agreed upon, as Freeman argues. Undoubt-
edly, he is correct that in most cases the Government and
the defendant will negotiate the term of imprisonment in a
(C) agreement by reference to the applicable Guidelines
provisions. See Brief for Petitioner 30–31 ("[T]he Guide-
lines are . . . the starting point and initial benchmark for
plea negotiations"); Brief for United States 33 (noting the
"concededly strong likelihood that the parties will . . .
calculat[e] and conside[r] potential Guidelines ranges in

─────────

[1] Prior to 2002, Rule 11's provisions governing binding plea agree-
ments were located in Rule 11(e)(1)(C). In substance they were largely
identical to the current rules in 11(c)(1)(C). See Fed. Rule Crim. Proc.
11(e)(1)(C) (2000).

the course of negotiating a plea agreement and selecting a specific sentence"). This only makes sense; plea bargaining necessarily occurs in the shadow of the sentencing scheme to which the defendant would otherwise be subject. See *United States* v. *Booker*, 543 U. S. 220, 255 (2005) ("[P]lea bargaining takes place in the shadow of . . . a potential trial" (emphasis deleted)).

The term of imprisonment imposed by the district court, however, is not "based on" those background negotiations; instead, as explained above, it is based on the binding agreement produced by those negotiations. I therefore cannot agree with Freeman that §3582(c)(2) calls upon district courts to engage in a free-ranging search through the parties' negotiating history in search of a Guidelines sentencing range that might have been relevant to the agreement or the court's acceptance of it. Nor can I agree with the plurality that the district judge's calculation of the Guidelines provides the basis for the term of imprisonment imposed pursuant to a (C) agreement.

II

These conclusions, however, do not mean that a term of imprisonment imposed pursuant to a (C) agreement can *never* be reduced under §3582(c)(2), as the Government contends. For example, Rule 11(c)(1)(C) allows the parties to "agree that a specific . . . sentencing range is the appropriate disposition of the case." In delineating the agreed-upon term of imprisonment, some (C) agreements may call for the defendant to be sentenced within a particular Guidelines sentencing range. In such cases, the district court's acceptance of the agreement obligates the court to sentence the defendant accordingly, and there can be no doubt that the term of imprisonment the court imposes is "based on" the agreed-upon sentencing range within the meaning of §3582(c)(2). If that Guidelines range is subsequently lowered by the Sentencing Commission, the de-

fendant is eligible for sentence reduction.

Similarly, a plea agreement might provide for a specific term of imprisonment—such as a number of months—but also make clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty. As long as that sentencing range is evident from the agreement itself, for purposes of §3582(c)(2) the term of imprisonment imposed by the court in accordance with that agreement is "based on" that range. Therefore, when a (C) agreement expressly uses a Guidelines sentencing range to establish the term of imprisonment, and that range is subsequently lowered by the Commission, the defendant is eligible for sentence reduction under §3582(c)(2).[2]

In so holding, I necessarily reject the categorical rule advanced by the Government and endorsed by the dissent, which artificially divorces a (C) agreement from its express terms.[3] Because the very purpose of a (C) agreement

––––––––––

[2] The dissent suggests that this rule results from a "mistaken shift in analysis" in this opinion from the actions of the judge to the intent of the parties. See *post*, at 4 (opinion of ROBERTS, C. J.). The purpose of a (C) agreement, however, is to bind the sentencing court to the terms agreed upon by the parties. See *supra*, at 3–4. Therefore, to determine whether a sentence imposed pursuant to a (C) agreement was "based on" a Guidelines sentencing range, the reviewing court must necessarily look to the agreement itself.

[3] The majority of the Courts of Appeals to have addressed this question have taken approaches consistent with the one I take today. See *United States* v. *Rivera-Martínez*, 607 F. 3d 283, 286–287 (CA1 2010); *United States* v. *Ray*, 598 F. 3d 407, 409–410 (CA7 2010); *United States* v. *Main*, 579 F. 3d 200, 203 (CA2 2009); *United States* v. *Scurlark*, 560 F. 3d 839, 842–843 (CA8 2009). It appears that only the Third Circuit has applied the absolute rule advanced by the Government. See *United States* v. *Sanchez*, 562 F. 3d 275, 282, and n. 8 (2009). As noted by the plurality, see *ante*, at 1, even the Sixth Circuit allows for sentence reduction "to avoid a miscarriage of justice or to correct a mutual mistake," *United States* v. *Peveler*, 359 F. 3d 369, 378, n. 4 (2004) (internal quotation marks omitted). And only two Courts of Appeals have adopted a wide-ranging approach similar to the one suggested by

is to allow the parties to determine the defendant's sentence, when the agreement itself employs the particular Guidelines sentencing range applicable to the charged offenses in establishing the term of imprisonment, the defendant is eligible to have his sentence reduced under §3582(c)(2).[4]  In such cases, the district court's reduction of the sentence does not rewrite the plea agreement; instead, it enforces the agreement's terms.

Like the plurality, I am not persuaded by the Government's argument that allowing a term of imprisonment imposed pursuant to a (C) agreement to be reduced under §3582(c)(2) deprives the Government of the benefit of the bargain it struck with the defendant.  When a (C) agreement explicitly employs a particular Guidelines sentencing range to establish the term of imprisonment, the agreement itself demonstrates the parties' intent that the imposed term of imprisonment will be based on that range, as required for sentence reduction under the statute.[5]  The Government's concern that application of

––––––––––

Freeman.  See *United States* v. *Garcia*, 606 F. 3d 209, 214 (CA5 2010) *(per curiam)*; *United States* v. *Cobb*, 584 F. 3d 979, 985 (CA10 2009).

[4] The dissent contends that, even when a (C) agreement expressly uses a Guidelines sentencing range to establish the term of imprisonment, the district court imposing a sentence pursuant to that agreement does not "appl[y]" that range within the meaning of the applicable Guidelines policy statement.  See *post*, at 4–5 (citing USSG §1B1.10(b)(1) (Nov. 2010)).  But in so arguing, the dissent—like the Government—would have courts ignore the agreement's express terms, which the court "applie[s]" when imposing the term of imprisonment.

[5] The plurality asserts that "[t]here is no good reason to extend the benefit [of sentence reduction] only to an arbitrary subset of defendants . . . based on whether their plea agreements refer to the Guidelines." *Ante*, at 10.  But the "good reason" is evident: Rule 11(c)(1)(C)'s entire purpose is to allow the parties' intent to determine sentencing outcomes.  See *supra*, at 3–4.  If a (C) agreement does not indicate the parties' intent to base the term of imprisonment on a particular Guidelines range subsequently lowered by the Commission, then §3582(c)(2) simply does not apply.

§3582(c)(2) to (C) agreements will result in certain defendants receiving an "unjustified windfall" is therefore misplaced. See Brief for United States 40, 43.

Furthermore, in cases where the Government believes that even the limited sentence reduction authorized by §3582(c)(2) and USSG §1B1.10 improperly benefits the defendant, it can argue to the district court that the court should not exercise its discretion under the statute to reduce the sentence.[6] See *Dillon*, 560 U. S., at ___ (slip op., at 9) (noting that, in applying §3582(c)(2), the court must "consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in [18 U. S. C.] §3553(a)").

Finally, if the Government wants to ensure *ex ante* that a particular defendant's term of imprisonment will not be reduced later, the solution is simple enough: Nothing prevents the Government from negotiating with a defendant to secure a waiver of his statutory right to seek sentence reduction under §3582(c)(2), just as it often does with respect to a defendant's rights to appeal and collaterally attack the conviction and sentence.[7] See 18 U. S. C. §3742; 28 U. S. C. §2255 (2006 ed., Supp. III); see also App. 28a–29a (provision in Freeman's agreement expressly waiving both rights). In short, application of

_____

[6] For example, the district court might decline to reduce the term of imprisonment of an eligible defendant in light of the Government's argument that it made significant concessions in the agreement—such as dropping a charge or forgoing a future charge—and therefore it would not have agreed to a lower sentence at the time the agreement was made.

[7] The opposite would not necessarily be true, however, under the reading of §3582(c)(2) proposed by the Government and the dissent. If a district court has no statutory authority to reduce a term of imprisonment imposed pursuant to a (C) agreement—because such a term is never "based on" a Guidelines sentencing range within the meaning of §3582(c)(2)—it is not clear how the parties could effectively confer that authority upon the court by the terms of their agreement.

§3582(c)(2) to an eligible defendant does not—and will not—deprive the Government of the benefit of its bargain.

## III

In order to conclude that Freeman is eligible for sentence reduction under §3582(c)(2), the plea agreement between Freeman and the Government must use a Guidelines sentencing range that has subsequently been lowered by the Sentencing Commission to establish the term of imprisonment imposed by the District Court. Freeman's agreement does.

The agreement states that Freeman "agrees to have his sentence determined pursuant to the Sentencing Guidelines," App. 28a, and that 106 months is the total term of imprisonment to be imposed, *id.*, at 26a. The agreement also makes clear that the §924(c)(1)(A) count to which Freeman agrees to plead guilty carries a minimum sentence of 60 months, "which must be served consecutively to" any other sentence imposed. *Id.*, at 27a. This leaves 46 months unaccounted for. The agreement sets Freeman's offense level at 19, as determined by the quantity of drugs and his acceptance of responsibility, and states that the parties anticipate a criminal history category of IV. *Id.*, at 27a–28a. Looking to the Sentencing Guidelines, an offense level of 19 and a criminal history category of IV produce a sentencing range of 46 to 57 months.[8] See USSG ch. 5, pt. A (sentencing table). Therefore, contrary to the dissent's curious suggestion that "there is no way of knowing what th[e] sentence was 'based on,'" *post*, at 6, it is evident that Freeman's agreement employed the

_____

[8] Because it is the parties' agreement that controls in the (C) agreement context, see *supra*, at 3–4, even if the District Court had calculated the range differently than the parties, see *post*, at 8 (ROBERTS, C. J., dissenting), Freeman would still be eligible for resentencing, as long as the parties' chosen range was one that was "subsequently . . . lowered by the Sentencing Commission," §3582(c)(2).

46-month figure at the bottom end of this sentencing range, in combination with the 60-month mandatory minimum sentence under §924(c)(1)(A), to establish his 106-month sentence.[9]  Thus the first of §3582(c)(2)'s conditions is satisfied—Freeman's term of imprisonment is "based on" a Guidelines sentencing range.

  In 2007 the Commission amended the Guidelines provisions applicable to cocaine base offenses, such that the offense level applicable to the quantity of drugs for which Freeman was charged was lowered from 22 to 20.  See App. 142a–143a (Sealed); USSG Supp. App. C, Amdt. 706.  Taking into account the three-level reduction for acceptance of responsibility, Freeman's recalculated offense level is 17, resulting in an amended sentencing range of 37 to 46 months.  Thus there can be no doubt that the Guidelines sentencing range originally used to establish Freeman's term of imprisonment "has subsequently been

——————

  [9]The dissent asks whether Freeman would be eligible for sentence reduction if the agreement had called for a 53-month term of imprisonment.  See *post*, at 7.  Though that question is not presented by the facts of this case, the answer is evident from the foregoing discussion: If the agreement itself made clear that the parties arrived at the 53-month term of imprisonment by determining the sentencing range applicable to Freeman's offenses and then halving the 106-month figure at its low end, he would have been eligible under §3582(c)(2).  See *United States* v. *Franklin*, 600 F. 3d 893, 897 (CA7 2010) (noting that a (C) agreement would not foreclose relief under §3582(c)(2) if it provided that the term of imprisonment was to be 40 percent below the low end of the applicable sentencing range).

  Of course, if a (C) agreement "does not contain any references to the Guidelines," *post*, at 8 (ROBERTS, C. J., dissenting), there is no way of knowing whether the agreement "use[d] a Guidelines sentencing range to establish the term of imprisonment," *supra*, at 6, and a prisoner sentenced under such an agreement would not be eligible.  It is therefore unclear why the dissent believes that the straightforward inquiry called for by the rule I apply today will "foster confusion" among the lower courts.  *Post*, at 7.  This approach is consistent with the one already taken by most Courts of Appeals, see n. 3, *supra*, and there is no indication that they have found it unpalatable, cf. *post*, at 9.

lowered by the Sentencing Commission," §3582(c)(2), such that the amendment "ha[s] the effect of lowering [Freeman's] applicable guideline range," §1B1.10(a)(2)(B). As a result, Freeman's term of imprisonment satisfies the second of §3582(c)(2)'s conditions. I therefore concur in the plurality's judgment that he is eligible for sentence reduction.

# SUPREME COURT OF THE UNITED STATES

———————

No. 09–10245

———————

## WILLIAM FREEMAN, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 23, 2011]

CHIEF JUSTICE ROBERTS, with whom JUSTICE SCALIA, JUSTICE THOMAS, and JUSTICE ALITO join, dissenting.

The plurality and the opinion concurring in the judgment agree on very little except the judgment. I on the other hand agree with much of each opinion, but disagree on the judgment. I agree with the concurrence that the sentence imposed under a Rule 11(c)(1)(C) plea agreement is based on the agreement, not the Sentencing Guidelines. I would, however, adhere to that logic regardless whether the agreement could be said to "use" or "employ" a Guidelines range in arriving at the particular sentence specified in the agreement. *Ante*, at 1 (opinion of SOTOMAYOR, J.). In that respect I agree with the plurality that the approach of the concurrence to determining when a Rule 11(c)(1)(C) sentence may be reduced is arbitrary and unworkable. *Ante*, at 9–10.

Section 3582(c)(2) provides that "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," a district court "may reduce the term of imprisonment . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U. S. C. §3582(c)(2). The lone issue here is whether petitioner William Freeman meets the initial prerequisite of having been sen-

tenced to a term of imprisonment "based on" a subsequently reduced sentencing range.

I agree with JUSTICE SOTOMAYOR that "the term of imprisonment imposed pursuant to a (C) agreement is, for purposes of §3582(c)(2), 'based on' the agreement itself." *Ante*, at 3. In this case, Freeman executed a written plea agreement in which the parties "agree[d] that a sentence of 106 months' incarceration [was] the appropriate disposition." App. 26a. Because the plea agreement was entered pursuant to Rule 11(c)(1)(C), that proposed sentence became binding on the District Court once it accepted the agreement. See Fed. Rule Crim. Proc. 11(c)(1)(C) (the parties' "request" for "a specific sentence" "binds the court once the court accepts the plea agreement"). As a result, when determining the sentence to impose on Freeman, the District Court needed to consult one thing and one thing only—the plea agreement. See *ante*, at 2 (opinion of SOTOMAYOR, J.) ("At the moment of sentencing, the court simply implements the terms of the agreement it has already accepted").

I also agree with JUSTICE SOTOMAYOR that the "term of imprisonment imposed by the sentencing judge is dictated by the terms of the agreement entered into by the parties, not the judge's Guidelines calculation," and that "[a]l-lowing district courts later to reduce a term of imprisonment simply because the court itself considered the Guidelines in deciding whether to accept the agreement would transform §3582(c)(2) into a mechanism by which courts could rewrite the terms of (C) agreements in ways not contemplated by the parties." *Ante*, at 3.

But then comes the O. Henry twist: After cogently explaining why a Rule 11(c)(1)(C) sentence is based on the plea agreement, JUSTICE SOTOMAYOR diverges from that straightforward conclusion and holds that Freeman nevertheless satisfies the threshold requirement in §3582(c)(2). According to her opinion, if a Rule 11(c)(1)(C) "agreement

expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment"—or if such use is "evident from the agreement"— then the defendant's "term of imprisonment is 'based on' the range employed and the defendant is eligible for sentence reduction under §3582(c)(2)." *Ante*, at 1, 6. This exception is in my view as mistaken as the position of the plurality—and basically for the same reasons.

JUSTICE SOTOMAYOR begins the departure from her own rule innocently enough. As she explains, "some (C) agreements may call for the defendant to be sentenced within a particular Guidelines sentencing range." *Ante*, at 5. In such a case, according to JUSTICE SOTOMAYOR, there can be "no doubt" that the prison term the court imposes is "based on" the agreed-upon sentencing range, and therefore the defendant is eligible for sentence reduction. *Ibid.*

Whether or not that is true, it provides no support for the next step:

> "Similarly, a plea agreement might provide for a specific term of imprisonment—such as a number of months—but also make clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty. As long as that sentencing range is evident from the agreement itself . . . the term of imprisonment imposed by the court in accordance with that agreement is 'based on' that range." *Ante*, at 6.

This category of cases is not "similar" to the first at all. It is one thing to say that a sentence imposed pursuant to an agreement expressly providing that the court will sentence the defendant within an applicable Guidelines range is "based on" that range. It is quite another to conclude that an agreement providing for a specific term is "similarly" based on a Guidelines range, simply because the specified term can be said to reflect that range.

According to the concurrence, if the parties simply "consider[ ] the Guidelines" or "negotiate . . . by reference" to them, the defendant is not eligible for a sentence reduction. *Ante*, at 4. If, however, the agreement sets forth a specific term but it is somehow "clear that the basis for the specified term is a Guidelines sentencing range," then the defendant is eligible for a sentence reduction. *Ante*, at 6. This head-scratching distinction between negotiating by reference to the Guidelines and using them as a basis for the specified term makes for an unworkable test that can yield only arbitrary results.

The confusion is compounded by the varying standards in the concurrence. Sometimes the test is whether an agreement "expressly uses" a Guidelines sentencing range, *ante*, at 1, 6; see *ante*, at 7 ("explicitly employs"). Other times the test is whether such use is "evident," *ante*, at 6, 9; see *ante*, at 10, n. 9 ("clear"). A third option is whether the agreement "*indicate[s]* the parties' intent to base the term of imprisonment on a particular Guideline range." *Ante*, at 7, n. 5 (emphasis added).

The error in the concurring opinion is largely attributable to a mistaken shift in analysis. In the first half of the opinion, the inquiry properly looks to what the *judge* does: He is, after all, the one who imposes the sentence. After approving the agreement, the judge considers only the fixed term in the agreement, so the sentence he actually imposes is not "based on" the Guidelines.

In the second half of the opinion, however, the analysis suddenly shifts, and focuses on the parties: Did *they* "use" or "employ" the Guidelines in arriving at the term in their agreement? But §3582(c)(2) is concerned only with whether a defendant "has been *sentenced* to a term of imprisonment based on a sentencing range." Only a court can sentence a defendant, so there is no basis for examining why the parties settled on a particular prison term.

This conclusion dovetails with USSG §1B1.10(b)(1)—

the Sentencing Commission's policy statement governing whether a defendant is eligible for a reduction under §3582(c)(2). As we explained last Term, §3582(c)(2) requires a district court "to follow the Commission's instructions in §1B1.10 to determine the prisoner's eligibility for a sentence modification." *Dillon* v. *United States*, 560 U. S. ___, ___ (2010) (slip op., at 9). According to §1B1.10(b)(1), the court must first determine "the amended guideline range that would have been applicable to the defendant" if the retroactively amended provision had been in effect at the time of his sentencing. "In making such determination, the court shall substitute only the amendments . . . for the corresponding guideline provisions that were *applied when the defendant was sentenced.*" USSG §1B1.10(b)(1), p. s. (emphasis added).

As noted, the District Court sentenced Freeman pursuant to the term specified by his plea agreement; it never "applied" a Guidelines provision in imposing his term of imprisonment. The fact that the court may have "use[d] the Guidelines as a yardstick in deciding whether to accept a (C) agreement does not mean that the term of imprisonment imposed by the court is 'based on' a particular Guidelines sentencing range." *Ante*, at 2–3 (opinion of SOTOMAYOR, J.). Even if the Guidelines were "used" or "employed" *by the parties* in arriving at the Rule 11(c)(1)(C) sentencing term, they were not "applied when the defendant was sentenced." Once the District Court accepted the agreement, all that was later "applied" was the sentence set forth in that agreement.

JUSTICE SOTOMAYOR is wrong to assert that her standard "does not rewrite the plea agreement" but rather "enforces the agreement's terms." *Ante*, at 7. According to the concurrence, "[w]hen a (C) agreement explicitly employs a particular Guidelines sentencing range to establish the term of imprisonment, the agreement itself demonstrates the parties' intent that the imposed term of im-

prisonment will be based on that range," and therefore
subject to reduction if the Commission subsequently low-
ers that range. *Ibid.* In this case, JUSTICE SOTOMAYOR
concludes that Freeman's agreement contemplated such a
reduction, even though the parties had "agree[d] that a
sentence of 106 months' incarceration is the appropriate
disposition of this case." App. 26a.

There is, however, no indication whatever that the par-
ties to the agreement contemplated the prospect of low-
ered sentencing ranges. And it is fanciful to suppose that
the parties would have said "106 months" if what they
really meant was "a sentence at the lowest end of the
applicable Guidelines range." Cf. App. 25a (parties in this
case recommending "a fine at the lowest end of the appli-
cable Guideline Range"). In concluding otherwise, the
concurrence "ignore[s] the agreement's express terms."
*Ante*, at 7, n. 4.

The reality is that whenever the parties choose a fixed
term, there is no way of knowing what that sentence was
"based on." The prosecutor and the defendant could well
have had quite different reasons for concluding that 106
months was a good deal. Perhaps the prosecutor wanted
to devote the limited resources of his office to a different
area of criminal activity, rather than try this case. Per-
haps the defendant had reason to question the credibility
of one of his key witnesses, and feared a longer sentence if
the case went to trial.

Indeed, the fact that there may be uncertainty about
how to calculate the appropriate Guidelines range could be
the basis for agreement on a fixed term in a plea under
Rule 11(c)(1)(C). Here the agreement made clear that
there was some doubt about the Guidelines calculations.
See App. 28a ("Both parties reserve the right to object to
the USSG §4A1.1 calculation of defendant's criminal
history"); *ibid.* (the parties acknowledge that their Guide-
lines calculations "are not binding upon the Court" and

that the "defendant understands the Court will independently calculate the Guidelines at sentencing and defendant may not withdraw the plea of guilty solely because the Court does not agree with . . . [the] Sentencing Guideline application").

In addition, parties frequently enter plea agreements that reflect prosecutorial decisions not to pursue particular counts. If a defendant faces three counts, and agrees to plead to one if the prosecutor does not pursue the other two, is the sentence reflected in the Rule 11(c)(1)(C) agreement in any sense "based on" the Guidelines sentencing range for the one count to which the defendant pleaded? Surely not. The concurrence tacitly concedes as much when it suggests that an agreement to "drop[ ] a charge or forgo[ ] a future charge" could ultimately be grounds for not reducing the defendant's sentence. *Ante*, at 8, n. 6. But what this really shows is a basic flaw in the "based on" test adopted by that opinion.

Finally, JUSTICE SOTOMAYOR's approach will foster confusion in an area in need of clarity. As noted, courts will be hard pressed to apply the distinction between referring to and relying on a Guidelines range. Other questions abound:

What if the agreement contains a particular Guidelines calculation but the agreement's stipulated sentence is outside the parties' predicted Guidelines range? The test in the concurring opinion is whether the agreement "uses" or "employs" a Guidelines sentencing range to establish the term of imprisonment, *ante*, at 1, not whether that term falls within the range. In this case, what if the term was 53 months—exactly half the low end of the sentencing range anticipated by the parties? Is it "evident" in that case that the Guidelines were used or employed to establish the agreed-upon sentence?*

———————

　*JUSTICE SOTOMAYOR responds that "[i]f the agreement itself made

What if the plea agreement does not contain any references to the Guidelines—not even the partial and tentative Guidelines calculations in Freeman's agreement—but the binding sentence selected by the parties corresponds exactly to the low end of the applicable Guidelines range? Is it "evident" in that case that the agreement is based on a sentencing range?

What if the District Court calculates the applicable Guidelines range differently than the parties? This is no academic hypothetical. See, *e.g.*, *United States* v. *Franklin*, 600 F. 3d 893, 896–897 (CA7 2010) (noting that "the district court settled on a higher guidelines range than that contemplated in the [Rule 11(c)(1)(C)] plea agreement"). Is a Rule 11(c)(1)(C) sentence still subject to reduction if the parties relied on the wrong sentencing range? JUSTICE SOTOMAYOR's surprising answer is "yes," see *ante*, at 9, n. 8, even though the governing Guidelines provision specifies that a defendant is only eligible for sentence reduction if the amended Guideline has "the effect of lowering the defendant's applicable guideline range"—presumably the *correct* applicable guideline range. See USSG §1B1.10(a)(2), p. s. Relying on error is just one unforeseen consequence of looking not to the specified term in a Rule 11(c)(1)(C) agreement, but instead trying to reconstruct what led the parties to agree to that term in the first place.

This confusion will invite the very thing JUSTICE SOTOMAYOR claims to disavow: a "free-ranging search" by district courts "through the parties' negotiating history in search of a Guidelines sentencing range that might have been relevant to the agreement." *Ante*, at 5. This is par-

─────────

clear" that the parties arrived at the 53-month figure by determining the sentencing range and then halving the range's low end—106 months—then the sentence could be reduced. *Ante*, at 10, n. 9. Does the 53-month figure itself make that clear? What if the figure is 26½ months?

ticularly unfortunate given that the whole point of Rule 11(c)(1)(C) agreements is to provide the parties with certainty about sentencing.

*    *    *

As with any negotiation, parties entering a Rule 11(c)(1)(C) plea agreement must take the bitter with the sweet. Because of today's decision, however, Freeman gets more sweet and the Government more bitter than either side bargained for. But those who will really be left with a sour taste after today's decision are the lower courts charged with making sense of it going forward.

I respectfully dissent.