CHRISTEN, Circuit Judge,
joined by
THOMAS, Chief Judge, and TALLMAN, NGUYEN, and HURWITZ, Circuit Judges,
concurring:.
Freeman v. United States, 564 U.S. 522, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011), addressed an issue of grave importance to Davis and to countless other prisoners in his position. The opinion issued today corrects an error in our circuit’s interpretation of Freeman, but it also represents a missed opportunity to straighten out our circuit’s inconsistent applications of Marks v. United States, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).
Marks specifically directs lower courts how to interpret splintered Supreme Court decisions. Its rule tends to crop up in the most contentious cases where, as here, the stakes are significant. Freeman is important, but Marks has even broader application to the wide spectrum of issues we decide. I join in the court’s holding— as far as it goes — but it is regrettable that our court articulates an incomplete interpretation of Marks. Leaving this work unfinished will surely result in continued uneven application of Marks within our circuit.
The rule announced in Marks appears simple at first glance but it has proven to be confounding. See Grutter v. Bollinger, 539 U.S. 306, 325, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003) (noting Marks has “baffled and divided the lower courts that have considered it” (quoting Nichols v. United States, 511 U.S. 738, 746, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994))). The opinion issued today untangles part of the problem because it decisively adopts a reasoning-based approach to determine when splin *1029 tered decisions produce binding precedent. Under this approach, I agree that no binding rule emerges from Freeman. I also agree that Justice Kennedy’s plurality opinion is the best framework for analyzing motions for sentence reduction in the context of Rule 11(c)(1)(C) plea agreements.
Unfortunately, we leave unanswered whether our court will take into account dissenting opinions when applying Marks. I join the majority because its holding is entirely consistent with Marks: “[W]e look to those opinions that concurred in the judgment and determine whether one of those opinions sets forth a rationale that is the logical subset of other, broader opinions.” But I disagree with the majority’s assumption that we might be free to take dissenting opinions into account in future Marks analyses. Marks leaves some questions unanswered, but it plainly limits our review to the opinions of “those Members [of the Court] who concurred in the judgments.” Marks, 430 U.S. at 193, 97 S.Ct. 990 (emphasis added). Because I do not see that this language leaves any room for our court to consider dissenting opinions, I would go further than the majority does and expressly state that dissents play no role in a Marks analysis. This is not to say that dissents serve no purpose. They can and should be read to provide context and a deeper understanding of the Court’s decisions, but they do not inform our analysis of what binding rule, if any, emerges from a fractured decision.
The dissent points to National Mutual Insurance Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949), as support for its view that dissenting opinions should be considered. Tidewater, of course, says nothing about how to interpret fractured Supreme Court decisions, though it was a fractured decision itself. In Tidewater, two concurring justices and four dissenting justices relied on the rule that Congress lacks authority to expand federal court subject matter jurisdiction beyond that provided in Article III. See id. at 604-46, 69 S.Ct. 1173. Our dissenting colleague is correct that courts have universally accepted this rule, but doing so does not require looking to Tidewaters, dissenting opinions. Indeed, as recognized in Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983), this rule pre-dates Tidewater by a long shot. See id. at 491, 103 S.Ct. 1962 (“This Court’s cases firmly establish that Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution.” (citing Hodgson v. Bowerbank, 9 U.S. 303, 5 Cranch 303, 3 L.Ed. 108 (1809); Kline v. Burke Constr. Co., 260 U.S. 226, 234, 43 S.Ct. 79, 67 L.Ed. 226 (1922))); see also Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 65, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (describing as “fundamental” that “Congress could not expand the jurisdiction of the federal courts beyond the bounds of Article III” (citing Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803))).
The Supreme Court at times looks to dissenting opinions when interpreting its own splintered decisions. See United States v. Jacobsen, 466 U.S. 109, 115, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); Moses H. Cone Mem’l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16-17, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). From this, the majority and dissent infer that we might be free to do the same. But the way the Supreme Court treats its own precedent says nothing about how lower courts must apply it. Marks, not Jacobsen or Moses H. Cone, is the Supreme Court authority that sets out the rule for lower courts to follow.[1] In my *1030 view, until the Supreme Court says otherwise, Marks precludes us from considering dissenting opinions.

. The dissent responds by pointing to the Supreme Court’s language in Moses H. Cone:
"[T]he [Fourth Circuit] Court of Appeals cor *1030 rectly recognized that the four dissenting Justices and Justice BLACKMUN [in Will v. Calvert Fire Insurance Co., 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978)] formed a majority to require application of the Colorado River test.” Moses H. Cone, 480 U.S. at 17, 107 S.Ct. 971. This was merely a recognition that, in Will, there were not enough votes to undermine Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Thus, the controlling rule the Fourth Circuit applied came from Colorado River, not Will. Moses H. Cone does not direct lower courts to look to dissenting opinions when divining a controlling rule from a fractured Supreme Court decision.