OPINION
PAEZ, Circuit Judge:
In this case, we must consider how to interpret the Supreme Court’s fractured opinion in Freeman v. United States, which addressed whether a defendant sentenced pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2). 564 U.S. 522, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011). Although a majority of the Court held that in such cases defendants remain eligible for relief under § 3582(c)(2), the plurality and concurring opinions did not agree on a single rationale. Citing Marks v. United States, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), which provides guidance on interpreting fractured Supreme Court opinions, we held in United States v. Austin that Justice Sotomayor’s concurring opinion was controlling, as it represented the narrowest grounds on which a majority of the justices agreed. See 676 F.3d 924 (9th Cir. 2012). Applying Justice Sotomayor’s approach, the district court denied Appellant Tyrone Davis’s (“Davis”) motion for a sentence reduction, ruling that his sentence was based on a Rule 11(e)(1)(C) plea agreement and not a “sentencing range that has subsequently been lowered by the Sentencing Commission” as required by § 3582(c)(2).
Revisiting Freeman and our application of Marks to fractured Supreme Court opinions, we hold that where we can identify no rationale common to a majority of the Justices, we are bound only by the result. In so holding, we join the D.C. Circuit, which concluded that Freeman lacks a controlling opinion “because the plurality and concurring opinions do not share common reasoning whereby one analysis is a logical subset of the other.” United States v. Epps, 707 F.3d 337, 350 (D.C. Cir. 2013) (internal quotation marks and citation omitted). Bound only by Free *1017 man’s specific result, the D.C. Circuit adopted the plurality opinion’s approach, which holds that “[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge’s decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and when it is, the defendant should be eligible to seek § 3582(c)(2) relief.” Freeman, 564 U.S. at 534, 131 S.Ct. 2685 (plurality opinion). We also adopt this approach and overrule Austin. Applying the plurality approach, we conclude that Davis is eligible to seek a sentence reduction under § 3582(c)(2). We therefore reverse the district court’s denial of Davis’s motion and remand for a determination of whether Davis should receive a reduction in his sentence.
I.
A.
In 2005, pursuant to a plea agreement entered into under Rule 11(c)(1)(C), Davis pled guilty to a series of counts related to distribution of cocaine base, or “crack cocaine.”[1] In his plea agreement, Davis admitted his offense conduct involved at least 170.5 grams of crack cocaine. Given the quantity of crack cocaine for which Davis accepted direct responsibility, the parties agreed that Davis’s base offense level was 34 under United States Sentencing Guidelines (“USSG”) § 2D1.1(c)(3) (Nov. 2005) and that the appropriate prison sentence would be eighteen years. The plea agreement acknowledged that under Rule 11(c)(1)(C), the district court had discretion to accept or reject the proposed agreement and recommended sentence. If the district court accepted the agreement, then under Rule 11(c)(1)(C) the recommended sentence would be binding on the court. On the other hand, if the court rejected the recommended sentence, the parties could withdraw from the agreement.
At sentencing in 2006, the district court calculated Davis’s total offense level as 37 with a Criminal History Category II, resulting in a Guidelines range of 235 to 293 months. The court accepted the Rule 11(c)(1)(C) plea agreement and imposed the recommended eighteen-year (216-month) sentence. We reversed and remanded, holding that the district court had erred in its determination of Davis’s criminal history category and in its imposition of an “organizer or leader” enhancement. United States v. Davis, 312 Fed.Appx. 909, 911-14 (9th Cir. 2009). At Davis’s resen-tencing in 2009, the district court calculated his total offense level as 36 with a Criminal History Category I, resulting in a Guidelines range of 188 to 235 months. The court reimposed the plea agreement’s recommended eighteen-year (216-month) sentence, finding it “fair and reasonable” under the Guidelines. We affirmed. United States v. Davis, 389 Fed.Appx. 616 (9th Cir. 2010).
B.
When Davis pled guilty, the Guidelines punished defendants far more harshly for crack cocaine offenses than for powder cocaine offenses. A defendant responsible for one gram of crack cocaine faced the same Guidelines sentence as a defendant responsible for one hundred grams of powder cocaine. This 100:1 ratio was roundly criticized for its racially disparate effects. See, e.g., Kimbrough v. United States, 552 *1018 U.S. 85, 98, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (citing the Sentencing Commission’s finding that the “severe sentences required by the 100-to-l ratio are imposed primarily upon black offenders”) (internal quotation marks omitted). As a 2006 survey by the Substance Abuse and Mental Health Services Administration showed, whites formed the biggest group of crack cocaine users in absolute numbers,[2] but African Americans were disproportionately arrested and convicted for crack cocaine offenses. A 2007 report by the Sentencing Commission documented that when Davis was sentenced in 2006, 81.8% of federal crack cocaine offenders were African American. U.S. Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy at 15 (2007) (“2007 Report”). Moreover, in a series of reports to Congress, the Sentencing Commission warned that the “data no longer support” the assumption that crack cocaine is more harmful than powder cocaine. Kimbrough, 552 U.S. at 97-98, 128 S.Ct. 558 (quoting U.S. Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy at 96 (2002); also citing the 2007 Report); see also United States v. Baptist, 646 F.3d 1225, 1226, 1228 n. 1 (9th Cir. 2011) (per curiam). Citing the “urgent and compelling” problems raised by the overly punitive crack sentencing scheme, the Sentencing Commission repeatedly called on Congress to reduce the 100:1 ratio. See, e.g., 2007 Report at 8-9. Federal judges and Department of Justice officials likewise joined the chorus of voices demanding reform. See, e.g., United States v. Then, 56 F.3d 464, 467 (2d Cir. 1995) (Calabresi, J., concurring) (“The unfavorable and disproportionate impact that the 100-to-l crack/cocaine sentencing ratio has on members of minority groups is deeply troubling.”); Remarks of Attorney General Eric Holder, D.C. Court of Appeals Judicial Conference (June 19, 2009), available at http://www.justice.gov/opa/speech/ attorney-general-eric-holder-dc-court-appeals-judicial-conferenee (“It is the view of this Administration that the 100-to-l crack-powder sentencing ratio is simply wrong. It is plainly unjust to hand down wildly disparate prison sentences for materially similar crimes.”).
In 2010, Congress responded by passing the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010), which dramatically reduced the sentencing ratio to 18:1. The Fair Sentencing Act also gave the Sentencing Commission “emergency authority” to “make such conforming amendments to the Federal sentencing guidelines.” Id. § 8. The Sentencing Commission responded by issuing amended Guidelines reflecting the new 18:1 ratio[3] and made the changes retroactive[4] for all defendants who have “been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.” 18 U.S.C. § 3582(c)(2).
*1019 C.
In 2012, Davis filed a pro se motion under § 3582(c)(2) seeking a retroactive reduction of his sentence in light of the amended Guidelines.[5] Before the Fair Sentencing Act, the stipulated amount of 170.5 grams of crack cocaine in Davis’s Rule 11(c)(1)(C) plea agreement resulted in a base offense level of 34. After the dramatic reduction in the sentencing ratio, that same amount yielded a base offense level of 28. USSG § 2D1.1(c)(6) (2011). Davis argued that he was eligible for a sentence modification under § 3582(c)(2) because his sentence was “based on” the Guidelines.
The district court denied the motion, holding that it lacked jurisdiction to modify Davis’s sentence because it was “based on” the Rule 11(c)(1)(C) plea agreement, not the Guidelines. In so ruling, the district court concluded that it was bound by Justice Sotomayor’s concurring opinion in Freeman. Davis appealed for a third time. A three-judge panel affirmed, relying on Austin. United States v. Davis, 776 F.3d 1088 (9th Cir. 2015). We granted rehearing en banc. United States v. Davis, 795 F.3d 1188 (9th Cir. 2015).[6]
II.
A.
In Freeman v. United States, the Supreme Court considered whether a defendant sentenced under a Rule 11(c)(1)(C) agreement may be eligible for a sentence reduction under § 3582(c)(2). 564 U.S. 522, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011). Five justices ultimately agreed that Freeman was . eligible for a reduction, but no rationale commanded a majority of the Court.
A four-justice plurality held that “[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge’s decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and when it is, the defendant should be eligible to seek § 3582(c)(2) relief.” Id. at 534, 131 S.Ct. 2685 (plurality opinion). Writing for the plurality, Justice Kennedy explained that this approach was consistent with the “text and purpose” of the Sentencing Reform Act, Rule 11(c)(1)(C), and the binding Guidelines policy statements in sections 6B1.2 and 1B1.10 relating to Rule 11(c)(1)(C) and § 3582(c)(2). Id. at 530, 131 S.Ct. 2685.
In a dissenting opinion by Chief Justice Roberts, four Justices took the contrary position that a sentence imposed under a Rule 11(c)(1)(C) agreement is never “based on” the Guidelines because the agreement itself serves as the foundation for the sentence imposed. Id. at 544, 131 S.Ct. 2685 (Roberts, C.J., dissenting).
Concurring only in the judgment, Justice Sotomayor staked out yet a third position. Justice Sotomayor argued that a sentence imposed under a Rule 11(c)(1)(C) *1020 agreement is generally based on the agreement, not the Guidelines, but rejected the dissent’s categorical bar to relief for all defendants sentenced under such agreements. Id. at 534, 131 S.Ct. 2685 (Sotomayor, J., concurring in the judgment). Justice Sotomayor concluded that district courts have jurisdiction to consider a sentence reduction in at least two circumstances: when the Rule 11(c)(1)(C) agreement either 1) “call[s] for the defendant to be sentenced within a particular Guidelines sentencing range,” or 2) “make[s] clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty” and “that sentencing range is evident from the agreement itself.” Id. at 538-39, 131 S.Ct. 2685.
To say that Freeman divided the Court would be an understatement. Not only did the plurality and dissenting opinions take opposite positions, but both also strongly criticized Justice Sotomayor’s concurrence. The plurality warned that the “consequences of [the concurrence’s] erroneous rule would be significant,” id. at 533, 131 S.Ct. 2685 (plurality opinion), while the dissent complained that Justice Sotoma-yor’s approach would “foster confusion in an area in need of clarity,” id. at 550, 131 S.Ct. 2685 (Roberts, C.J., dissenting). The dissenting opinion accurately stated that the plurality and concurrence “agree on very little except the judgment.” Id. at 544, 131 S.Ct. 2685 (Roberts, C.J., dissenting). Thus, the 4-1-4 Freeman Court did not articulate a clear path forward for analysis of sentence-reduction requests by defendants sentenced under Rule 11(c)(1)(C) agreements.
B.
1.
In Marks v. United States, the Supreme Court explained that “[w]hen a fragmented Court decides a ease and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.” 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (internal quotation marks and citation omitted). In the nearly forty years since Marks, lower courts have struggled to divine what the Supreme Court meant by “the narrowest grounds.” Indeed, the Court has acknowledged that the Marks inquiry at times has “baffled and divided the lower courts that have considered it,” Nichols v. United States, 511 U.S. 738, 746, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), and that the “test is more easily stated than applied.” Grutter v. Bollinger, 539 U.S. 306, 325, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003) (quoting Nichols, 511 U.S. at 745-46, 114 S.Ct. 1921). In the face of this confusion, two main approaches have emerged: one focusing on the reasoning of the various opinions and the other on the ultimate results.
The D.C. Circuit has offered a clear example of the first approach. In King v. Palmer, the court explained:
Marks is workable' — one opinion can be meaningfully regarded as “narrower” than another — only when one opinion is a logical subset of other, broader opinions. In essence, the narrowest opinion must represent a common denominator of the Court’s reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment.
950 F.2d 771, 781 (D.C. Cir. 1991) (en banc). The D.C. Circuit reaffirmed this approach in Epps, describing Marks as applicable only when “the concurrence posits a narrow test to which the plurality must necessarily agree as a logical consequence of its own, broader position.” 707 F.3d at 348 (emphasis omitted) (quoting King, 950 F.2d at 782).
*1021 The second approach looks to results rather than reasoning. It defines the narrowest ground as the rule that “would necessarily produce results with which a majority of the Justices from the controlling case would agree.” See, e.g., Planned Parenthood of Se. Pa. v. Casey, 947 F.2d 682, 694-97 (3d Cir. 1991) (finding that Justice O’Connor’s concurring opinions controlled the fractured decisions in Webster v. Reproductive Health Services, 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), and Hodgson v. Minnesota, 497 U.S. 417, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990), because a majority of justices in each case would have agreed with her result), aff'd in part, rev’d in part, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).
2.
Our cases interpreting Marks have not been a model of clarity. On one occasion, we cited the “results” language described above. See United States v. Williams, 435 F.3d 1148, 1157 n. 9 (9th Cir. 2006) (explaining that a concurrence is controlling under Marks if it “would affect a narrower range of cases than that of the plurality”). Nonetheless, in Williams and other decisions applying Marks to a fractured Supreme Court decision, we analyzed whether the reasoning of a narrower opinion fit entirely into the circle drawn by a broader opinion in order to derive a rule. Our most recent decision to address Marks explicitly employed the “reasoning” approach. Lair v. Bullock, 697 F.3d 1200 (9th Cir. 2012). In Lair, we approvingly cited King and held that the Marks standard applies only “where one opinion can be meaningfully regarded as narrower than another and can represent a common denominator of the Court’s reasoning.” Id. at 1205 (quoting United States v. Rodriguez-Preciado, 399 F.3d 1118, 1140 (9th Cir.), amended by 416 F.3d 939 (9th Cir. 2005)). Unless “the narrowest opinion is actually the logical subset of other broader opinions, ... the only binding aspect of a splintered decision is its specific result.” Id. (internal quotation marks and citation omitted).
To foster clarity, we explicitly adopt the reasoning-based approach to applying Marks. This approach is not only consistent with our most recent caselaw, see Lair, 697 F.3d 1200, but also makes the most sense.[7] A fractured Supreme *1022 Court decision should only bind the federal courts of appeal when a majority of the Justices agree upon a single underlying rationale and one opinion can reasonably be described as a logical subset of the other. When no single rationale commands a majority of the Court, only the specific result is binding on lower federal courts.
III.
Applying Marks, as clarified above, to Freeman, we overrule our holding in Austin that Justice Sotomayor’s concurrence controls.[8] Instead, we adopt the analysis of the D.C. Circuit in Epps that there was no common denominator in Freeman “because the plurality and concurring opinions do not share common reasoning whereby one analysis is a logical subset of the other.” Epps, 707 F.3d at 350 (internal quotation marks and citation omitted).
Justice Sotomayor’s concurrence cannot reasonably be described as a logical subset of Justice Kennedy’s plurality opinion. The Freeman plurality explicitly rejected the concurrence’s reasoning, in particular its underlying premise that a sentence imposed under a Rule 11(c)(1)(C) agreement is “based on” the parties’ agreement, not the Guidelines. 564 U.S. at 529, 131 S.Ct. 2685 (plurality opinion); Id. at 535-36, 131 S.Ct. 2685 (Sotomayor, J., concurring in the judgment). Even in setting out the circumstances in which she would find a defendant sentenced under a Rule 11(c)(1)(C) agreement eligible for relief, Justice Sotomayor focused on the role the parties’ Guidelines calculations play in crafting a Rule 11(c)(1)(C) agreement. Id. at 538-39, 131 S.Ct. 2685. By contrast, the plurality focuses on the role of the judge’s Guidelines calculations in deciding whether to accept or reject the agreement. Id. at 529, 131 S.Ct. 2685 (plurality opinion). This fundamental divergence in reasoning is enough to demonstrate that Justice Soto-mayor’s rationale is not controlling Supreme Court law. Although in Freeman these divergent approaches led to the same result, the D.C. Circuit properly recognized that “the set of cases where the *1023 defendant prevails under the concurrence is not always nestled within the set of cases where the defendant prevails under the plurality....” Epps, 707 F.3d at 351.
Two examples from Epps are instructive.[9] First consider the following scenario:
[T]he parties may state in the plea agreement that a particular range applies and agree to a sentence at the bottom of that range, but the district court may not agree that the range determined by the parties applies, finding for example that the career offender range is applicable instead, but notwithstanding this finding accept the plea because it is to a term that is acceptable to the court for reasons unrelated to the guideline range determined by the parties.
Id. at 350 n. 8. Justice Sotomayor would allow a sentence reduction in this example because the agreement explicitly “call[s] for the defendant to be sentenced within a particular Guidelines sentencing range.” Freeman, 564 U.S. at 538, 131 S.Ct. 2685 (Sotomayor, J., concurring in the judgment). The plurality, on the other hand, “would find [Freeman] ineligible because the range that the parties agreed to played no role in the court’s determination that this was an appropriate sentence, despite the fact that the court imposed the agreed-upon term of imprisonment.” Epps, 707 F.3d at 350 n. 8. Thus, the plurality opinion is actually the narrower one in certain respects.
A second example produces a similar result:
The sentencing court ... might consider and reject the guideline range used by the parties, not because the court finds that a different guidelines range (such as the career offender range) applies, but because, having considered the applicable guidelines range, the court rejects it as a matter of policy and selects its sentence without regard to it.
Id. Here again, if the court decides “for reasons unrelated to the guidelines range to impose the sentence the parties agreed upon,” the defendant would be eligible for a reduction under Justice Sotomayor’s approach but not under the plurality’s. Id.
These examples make clear that the plurality and concurring opinions cannot be explained by a diagram in which a circle representing the reasoning of Justice Soto-mayor’s opinion sits neatly within a circle representing the reasoning of the plurality opinion. Because both opinions would allow sentence reductions in situations where the other would not, Justice Sotomayor’s con *1024 currence is not the “narrowest grounds” envisioned by Marks.[10]
We recognize that, with the exception of the D.C. Circuit, every other circuit that has considered the issue has adopted Justice Sotomayor’s concurrence as the controlling opinion in Freeman. But we do not find those opinions convincing. Most engage with Marks only superficially, quoting its language with no analysis. See, e.g., United States v. Graham, 704 F.3d 1275, 1278 (10th Cir. 2013); United States v. Browne, 698 F.3d 1042, 1045-46 (8th Cir. 2012); United States v. Dixon, 687 F.3d 356, 359-60 (7th Cir. 2012); United States v. Smith, 658 F.3d 608, 611 (6th Cir. 2011).[11] Given their lack of meaningful analysis, these opinions lack persuasive force.
Those few cases that do discuss how Marks should apply to Freeman mistakenly conclude that although the “gap between the plurality and the concurrence is wide, [] it is still possible to tease out a common denominator.” United States v. Rivera-Martinez, 665 F.3d 344, 348 (1st Cir. 2011); see also United States v. Thompson, 682 F.3d 285, 289-90 (3d Cir. 2012). Not so. As the examples above demonstrate, there are some circumstances where defendants would be eligible for relief under Justice Sotomayor’s approach but not under the plurality’s. We therefore cannot agree with the First Circuit’s assertion that the “plurality would surely agree that in every case in which a defendant’s C-type plea agreement satisfies the criteria for Justice Sotomayor’s exception ... the sentencing judge’s decision to accept that sentence is based on the guidelines.” Rivera-Martinez, 665 F.3d at 348. A more nuanced reading of both opinions leads us to conclude that “there is no controlling opinion in Freeman because the plurality and concurring opinions do not share common reasoning whereby one analysis is a logical subset of the other.” Epps, 707 F.3d at 350 (internal quotation marks and citation omitted).
Marks instructs us to consider the opinions only of “those Members who concurred in the judgments on the narrowest grounds” when deriving a rule from a fractured Supreme Court decision. Marks, 430 U.S. at 193, 97 S.Ct. 990 (quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, & Stevens, JJ.) (emphasis added)). Nonetheless, we acknowledge that the Supreme Court and our sister circuits have considered dissenting opinions when interpreting fragmented Supreme Court decisions. See, e.g., United States v. Jacobsen, 466 U.S. 109, 115-17, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (relying on a dissenting opinion to derive the rule in Walter v. United States, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980)); Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16-17, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (holding that Will v. Calvert Fire Insurance did not overrule *1025 the “Colorado River test” because Will’s four dissenting Justices agreed with the concurring opinion that the test remained in effect); United States v. Donovan, 661 F.3d 174, 182 (3d Cir. 2011) (explaining that the court “looked to the votes of dissenting Justices if they, combined with votes from plurality or concurring opinions, establish a majority view on the relevant issue”). Here, we assume but do not decide that dissenting opinions may be considered in a Marks analysis.[12]
Considering Chief Justice Roberts’s dissent would not change our conclusion because we cannot derive any common denominator by combining Freeman’s dissenting opinion with either the plurality or concurring opinion. First, no rule can be derived from the Freeman plurality and dissenting opinions, as neither is a “logical subset” of the other. Indeed, the plurality holding that “[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge’s decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines,” Freeman, 564 U.S. at 534, 131 S.Ct. 2685 (plurality opinion) is diametrically opposed to the dissent’s position that a sentence imposed under a Rule 11(c)(1)(C) agreement is never “based on” the Guidelines because the agreement itself serves as the foundation for thé sentence imposed, id. at 544-45, 131 S.Ct. 2685 (Roberts, C.J., dissenting). In practical terms, this divergence means the dissent would categorically find all defendants sentenced under a Rule 11(c)(1)(C) agreement ineligible for a sentence reduction, while the plurality would permit a reduction in most cases. Thus, the plurality and dissent “do not share common reasoning whereby one analysis is a logical subset of the other.” Epps, 707 F.3d at 350 (internal quotation marks and citation omitted).
Second, Justice Sotomayor’s concurring opinion is not a logical subset of the dissenting opinion, or vice versa. Again, the dissent would categorically bar defendants sentenced under Rule 11(c)(1)(C) agreements from seeking relief under § 3582(c)(2). Freeman, 564 U.S. at 544-45, 131 S.Ct. 2685 (Roberts, C.J.. dissenting). Justice Sotomayor, by contrast, would permit sentence reductions in limited circumstances: if the Rule 11(c)(1)(C) agreement' either 1) “call[s] for the defendant to be sentenced within a particular Guidelines sentencing range,” or 2) “make[s] clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty” and “that sentencing range is evident from the agreement itself.” Id. at 538-39, 131 S.Ct. 2685 (Sotomayor, J., concurring in the judgment). Despite the dissent’s arguments to the contrary, these approaches cannot be reconciled because Justice Sotomayor explicitly “rejected] the categorical rule advanced by the Government and endorsed by the dissent, which artificially divorces a [Rule 11(c)(1)(C) ] agreement from its express terms.” Id. at 539, 131 S.Ct. 2685. Indeed, in evaluating Freeman’s case, Justice Soto-mayor stated that “contrary to the dissent’s curious suggestion that ‘there is no way of knowing what th[e] sentence was based on,’ ” the basis for Freeman’s sentence was evident from the Rule 11(c)(1)(C) agreement itself. Id. at 542-43, 131 S.Ct. 2685.
The Freeman dissent is similarly critical of Justice Sotomayor, describing her view that certain Rule 11(c)(1)(C) defendants are eligible for relief as just “as mistaken *1026 as the position of the plurality — and basically for the same reasons.” Id. at 545, 131 S.Ct. 2685 (Roberts, C.J., dissenting). Chief Justice Roberts characterized her approach as “head-scratching,” id. at 547, 131 S.Ct. 2685, and likely to “foster confusion in an area in need of clarity,” id. at 550, 131 S.Ct. 2685. Neither opinion lays out the “common denominator of the Court’s reasoning” because Justice Soto-mayor and the dissenters disagree on the fundamental question of whether a defendant sentenced under a Rule 11(c)(1)(C) agreement can ever be eligible for a sentence reduction under § 3582(c)(2). Simply put, no combination of Freeman’s dissenting and concurring opinions yields a binding rule that we must follow.
IV.
A.
Given that no opinion in Freeman controls, we consider which of the rationales set forth in the varying opinions is most persuasive. Epps, 707 F.3d at 351. In so doing, we are restricted only by the ultimate result in Freeman: that defendants sentenced under Rule 11(c)(1)(C) agreements are not categorically barred from seeking a sentence reduction under § 3582(c)(2). We join the D.C. Circuit and adopt the plurality’s rule: “Even when a defendant enters into an 11(c)(1)(C) agreement, the judge’s decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and when it is, the defendant should be eligible to seek § 3582(c)(2) relief.” Freeman, 564 U.S. at 534, 131 S.Ct. 2685 (plurality opinion).
As the plurality explained, three critical sources support this approach. First, “[fjederal sentencing law requires the district judge” to impose sentences that comply with “the purposes of federal sentencing, in light of the Guidelines and other § 3553(a) factors.” Id. at 529, 131 S.Ct. 2685. Thus, by statute, a sentencing judge’s discretion is always framed by the Guidelines.
Second, Justice Kennedy looked to the district court’s authority under Rule 11(c)(1)(C). Although the Rule “permits the defendant and the prosecutor to agree on a specific sentence,” it preserves “the district court’s independent obligation to exercise its discretion” and review the proposed sentence. Id. Because judges “use the Guidelines range as the starting point,” they serve in a “real sense [as] a basis for the sentence,” “[e]ven where the judge varies from the recommended range.” Id.
Third, the Guidelines policy statements that apply to Rule 11(c)(1)(C) plea agreements and § 3582(c)(2) motions support the plurality’s approach. Once a district court accepts a Rule 11(c)(1)(C) plea agreement, the parties’ recommended sentence is binding on the court. As the Freeman plurality noted, however, the applicable Guidelines policy statement “forbids the district judge to accept an 11(c)(1)(C) agreement without first evaluating the recommended sentence” under the Guidelines. Id.-, USSG § 6B1.2(e). Indeed, as the plurality further noted, the commentary to the policy statement instructs a sentencing court to accept the recommended sentence only if it is an appropriate sentence within the applicable Guidelines range or “departs ... for justifiable reasons.” Freeman, 564 U.S. at 529, 131 S.Ct. 2685 (plurality opinion). The Guidelines policy statement that applies to § 3582(c)(2) motions likewise supports the plurality opinion. See USSG § lB1.10(b)(l). As the plurality explained, § lB1.10(b)(1) directs the district judge “in modifying a sentence to substitute only the retroactive amendment and then leave all original Guidelines determinations in place.” Freeman, 564 U.S. at 530, 131 S.Ct. 2685 (plurality opinion). The goal of *1027 the sentence modification is to “isolate” the effect of the amended Guideline while leaving undisturbed the other factors that determined the sentence imposed. Id.[13] This suggests that a defendant should be eligible for a sentence reduction when one factor in a defendant’s sentence was a “since-rejected Guideline.” Id.
Not only does the plurality approach best conform with these relevant sources, but a “contrary focus on the parties’ intentions would contribute to the unwarranted disparity that the [Sentencing Reform Act] was designed to reduce.” Epps, 707 F.3d at 351. In reducing the crack cocaine sentencing range, Congress and the Sentencing Commission sought to address “the urgent and compelling problem of crack-cocaine sentences.” Freeman, 564 U.S. at 533, 131 S.Ct. 2685 (plurality opinion) (internal quotation marks omitted); supra at I.B. “Section 3582(c)(2) empowers district judges to correct sentences that depend on frameworks,” like the one for crack cocaine, “that later prove unjustified.” Freeman, 564 U.S. at 526, 131 S.Ct. 2685 (plurality opinion). Justice Sotoma-yor’s approach would “extend the benefit of the Commission’s judgment only to an arbitrary subset of defendants whose agreed sentences were accepted in light of a since-rejected Guidelines range based on whether their plea agreements refer to the Guidelines.” Id. at 533-34, 131 S.Ct. 2685. Thus, adoption of the concurring opinion would “undercut a systemic solution” to a “systemic injustice.” Id. at 534, 131 S.Ct. 2685. For all these reasons, we adopt the approach of the Freeman plurality opinion.
B.
Applying the plurality’s approach, we hold that Davis is eligible for relief under § 3582(c)(2) because the district court’s “decision to accept the plea and impose the recommended sentence” was “based on the Guidelines.” Freeman, 564 U.S. at 534, 131 S.Ct. 2685 (plurality opinion). Davis’s Rule 11(c)(1)(C) plea agreement was clearly rooted in the Guidelines. First, it required the district judge to “determine Defendant’s applicable Sentencing Guidelines range at the time of the sentencing.” Second, the agreement stated that the amount of crack cocaine for which Davis admitted direct responsibility would yield a base offense level of 34 under Guidelines § 2D1.1(c)(3). Third, Davis’s agreement explained that he qualified for a Guidelines increase under § 2D1.2 for proximity to a school zone and a Guidelines reduction under § 3E1.1 for acceptance of responsibility.
The district judge’s decision to reimpose the eighteen-year sentence was also based on the Guidelines. During the resentencing hearing, the district court recalculated Davis’s total offense level at 36 and a Guidelines range of 188 to 235 months. Then, reflecting on all the evidence presented, the court determined that the original eighteen-year sentence—which, at 216 months, fell within the calculated range— was “fair and reasonable” under the Guidelines.
Taken together, the text of Davis’s plea agreement and the judge’s statements during the sentencing hearing leave no *1028 doubt that the sentence imposed was “based on” the Guidelines. Thus, Davis is eligible for a sentence reduction and all that remains for the district court is to make the discretionary determination whether Davis should actually receive a reduction under § 3582(c)(2) and the Guidelines’ related policy statements in section 1B1.10.[14]
Conclusion
In sum, when applying Marks to a fractured Supreme Court decision, we look to those opinions that concurred in the judgment and determine whether one of those opinions sets forth a rationale that is the logical subset of other, broader opinions. When, however, no “common denominator of the Court’s reasoning” exists, we are bound only by the “specific result.”
Applying that framework to Freeman, we conclude that, contrary to our prior decision in Austin, Justice Sotomayor’s concurrence is not the logical subset of the plurality opinion. Nor can we extract a shared reasoning by including the dissent in our analysis. Thus, we overrule Austin and adopt the Freeman plurality approach as the most persuasive means of analyzing sentence reductions in the context of Rule 11(c)(1)(C) plea agreements. Accordingly, we reverse the district court’s determination that Davis is not eligible for a sentence reduction and remand for reconsideration of whether Davis should receive a sentence reduction under § 3582(c)(2) and the Guidelines’ related policy statements.
REVERSED and REMANDED.

. Davis pled guilty to the following offenses alleged in the Third Superseding Indictment: conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 1); distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 860 (Counts 10 and 11); and possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 12 and 13).

.Results from the Substance Abuse and Mental Health Services Administration’s National Survey on Drug Use and Health from 2006 show that 3.3% of whites report ever using crack cocaine compared with 5.4% of African Americans. Thus, in absolute numbers, white crack cocaine users far outnumber African-American crack cocaine users. Quick Table: Ever Used Crack BY Race and Ethnicity, National Survey on Drug Use and Health, 2006, available at https://www.icpsr.umich.edu/ icpsrweb/NAHDAP/series/00064/studies (follow "National Survey on Drug Use and Health, 2006”; then follow "Quick Tables, Drug Use: Entire Sample”; then follow "Crack Use”; then select "Race and Ethnicity”; and generate table).

. See U.S. Sentencing Guidelines Manual app. C, Amend. 748 (U.S. Sentencing Comm'n 2010) (adjusting Guidelines temporarily); id. at Amend. 750 (2011) (making adjustment permanent).

. Id. at Amend. 759 (making Amendment 750 retroactive).

. Section 3582(c)(2) permits a district court to
modify a term of imprisonment ... in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(6), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

. Whether a district court has jurisdiction to modify a defendant’s sentence under 18 U.S.C. § 3582(c)(2) is a legal question that we review de novo. United States v. Paulk, 569 F.3d 1094, 1095 (9th Cir. 2009) (per curiam).

. This approach is not “fundamentally inconsistent with Marks itself.” Dissent at 1033, 1034 n. 7. Marks never defined the "narrowest grounds,” and the dissent identifies no subsequent Supreme Court case that has offered an explanation or clarification of Marks as requiring an unwavering focus on results. The difficult task of interpreting Maries has been left to the courts of appeal. See, e.g., King, 950 F.2d at 781; Lair, 697 F.3d at 1205; United States v. Johnson, 467 F.3d 56, 62-64 (1st Cir. 2006).
More importantly, Marks cannot be viewed in isolation. In subsequent cases interpreting fractured Supreme Court decisions, the Court has frequently focused on reasoning, rather than results. Indeed, the dissent recognizes as much when it argues that Marks requires consideration of dissenting opinions. Dissent at 1039-41, 1039-40 n. 9 (describing the various opinions in the fractured National Mutual Insurance Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949), decision). As the dissent states, "[s]ince Tidewater, courts have universally accepted that Congress may not expand the scope of subject-matter jurisdiction conferred by Article III through passage of a Congressional Act,” even though that rule could only be derived by combining the “views” or “rationale[s]” of Tidewater’s concurrence and dissent. Dissent at 1039-40; 1039-40 n. 9. Thus, even the dissent acknowledges that the Supreme Court and lower courts have employed a reasoning-based approach to analyzing prior fractured Supreme Court decisions. A results approach cannot explain the governing rule that emerged from Tidewater.
Similarly, the dissent mischaracterizes United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), as employing a results-based approach. Dissent 1034 n. *1022 7. In our view, the rule that "the legality of the government search must be tested by the scope of the antecedent private search,” id. at 115-16, 104 S.Ct. 1652, represents a common reasoning shared by the dissenting and plurality opinions, not a result or outcome on which they agree. The dissent’s own cases therefore contradict its assertion that a reasoning-based approach is an "invention” of the Ninth and D.C. Circuits. Dissent at 1030-31, 1035-36.

. Following the adoption of the Fair Sentencing Act, we have issued, in addition to Austin, two opinions that discuss sentence modifications under § 3582(c)(2) and that bear mentioning here.
First, in United States v. Bride, we held that a defendant who was sentenced under a Rule 11(c)(1)(C) agreement could not seek a sentence reduction because his sentence was not "based on a sentencing range that had been subsequently lowered by the Sentencing Commission.” 581 F.3d 888, 889 (9th Cir. 2009). We explicitly stated, however, that we did not "reach the issue of whether § 3582(c)(2) relief is necessarily precluded when the district court imposes a sentence pursuant to a Rule 11(c)(1)(C) plea agreement.” Id. at 891 n. 5. Austin distinguished Bride on this basis. Austin, 676 F.3d at 927 n. 1. Nonetheless, to the extent Bride conflicts with our opinion today, it is overruled.
Second, in United States v. Pleasant, we cited Austin for the proposition that Justice Sotomayor’s Freeman concurrence controls, and held that the defendant was eligible for a sentence reduction because his Rule 11(c)(1)(C) plea agreement fell under one of her two exceptions. 704 F.3d 808, 811 (9th Cir. 2013). Although the thrust of the Pleasant opinion focused on the separate question of whether a sentence reduction would be "consistent” with the Guidelines, we determined that Pleasant satisfied the threshold eligibility determination. Id. at 811-12. As with Bride, to the extent Pleasant's interpretation of Freeman is inconsistent with this opinion, it is overruled.

. The dissent criticizes these examples, dissent at 1036-38, but its analysis is oversimplified in suggesting that the plurality would always allow a sentence modification in a Rule 11(c)(1)(C) agreement. If the plurality intended such a rule, it could easily have explicitly said so. Instead, Justice Kennedy wrote "[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge’s decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines.” Freeman, 564 U.S. at 534, 131 S.Ct. 2685 (plurality opinion) (emphasis added). Likely is not the same as always. Similarly, the plurality wrote that a "district judge’s decision to impose a sentence may therefore be based on the Guidelines even if the defendant agrees to plead guilty under Rule 11(c)(1)(C).” Id. at 526, 131 S.Ct. 2685 (emphasis added). That is different than saying that a Rule 11(c)(1)(C) sentence is always based on the Guidelines.
Nor did Justice Kennedy explicitly reject the idea “that his approach would limit relief to only a 'subset of defendants,' ” as the dissent claims. Dissent at 1037. Rather, in the passage the dissent cites, the plurality rejected Justice Sotomoyor's approach because of the arbitrariness of allowing sentence reductions only for those defendants whose plea agreements refer to the Guidelines. Freeman, 564 U.S. at 532-33, 131 S.Ct. 2685 (plurality opinion). Justice Kennedy never said he disagreed with Justice Sotomayor because her approach would "fail to permit resentencing in all cases.” Dissent at 1037.

. We emphasize that this results-oriented approach is used only to highlight the lack of a shared reasoning between Freeman's plurality and concurring opinions. Our primary focus remains on the text of the two opinions, rather than on their application to hypothetical cases.

. For example, the Tenth Circuit quoted the Marks "narrowest grounds” test and then summarily agreed with the district court that "[a]pplying this rule,” Justice Sotomayor’s concurrence controls. Graham, 704 F.3d at 1278. Similarly, the Sixth Circuit concluded that "Justice Sotomayor’s opinion is the narrowest ground for the Court's decision and thus represents the Court’s holding in Freeman" without citing Marks. Smith, 658 F.3d at 611. The Second Circuit has considered the issue only in an unpublished summary order. United States v. White, 429 Fed.Appx. 43, 47 (2d Cir. 2011) (finding that Justice Sotoma-yor’s concurrence is controlling).

. We note that in King, the D.C. Circuit explicitly stated that it was not “free to combine a dissent with a concurrence to form a Marks majority.” King, 950 F.2d at 783. We emphasize here, however, that we do not decide that issue.

. By preserving all Guidelines calculations other than the one that was retroactively reduced, the policy statements in section IB 1.10(b) substantially limit district court discretion when ruling on § 3582(c)(2) motions. Freeman, 454 U.S. at 531-32, 102 S.Ct. 781 (plurality opinion). Further, district courts cannot vary below the Guidelines in a § 3582(c)(2) proceeding, as they can in an initial sentencing proceeding. Id.', USSG § IB 1.10(b)(2)(A). And, given the availability of appellate review, any concern that the plurality’s approach will "upset the bargain struck between prosecutor and defendant” is overstated. Freeman, 564 U.S. at 531, 131 S.Ct. 2685 (plurality opinion).

. We emphasize that our decision merely removes ’the jurisdictional hurdle that led the district court to deny Davis a resentencing hearing. On remand, “[i]f the district court, based on its experience and informed judgement, concludes the [Rule 11(c)(1)(C)] agreement led to a more lenient sentence than would otherwise have been imposed, it can deny the motion, for the statute permits but does not require the court to reduce a sentence.” Freeman, 564 U.S. at 532, 131 S.Ct. 2685 (plurality opinion).